**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| STELLAR-MARK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-2445 (PJS/RLE) |
| | ) | |
| ADVANCED POLYMER, | ) | |
| TECHNOLOGY CORP., NEIL | ) | |
| SAVITCH and MARK STOVER | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ADVANCED POLYMER TECHNOLOGY CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT**

This Memorandum of Law is submitted by Advanced Polymer Technology Corporation ("APT") in support of its Motion for Summary Judgment. In this Memorandum, APT demonstrates that it is entitled to summary judgment on each of the counterclaims asserted by APT against Plaintiff Stellar-Mark, Inc. ("Stellar-Mark") and on each claim asserted by Stellar-Mark against APT.

## I. STATEMENT OF RELEVANT FACTS

### A. The Parties

APT manufactures, among other things, protective polyurethane water proofing and coating materials, including products used to coat parking decks. Declaration of Richard Cardosi ("Cardosi Declaration"), ¶ 3. Beginning in 1994, APT sold such products to Stellar-Mark. Throughout the parties' business relationship, APT manufactured the products and private labeled the products for Stellar-Mark. Id. ¶ 4.

Stellar-Mark then sold the products under Stellar-Mark's trade name and trademarks, including "Stellar-Mark," "Pro-Deck" and "Pro-Joint." <u>Id.</u>; Complaint, ¶ 10.

Throughout 2003, Stellar-Mark ordered a number of coating products from APT, which APT manufactured, private labeled, and shipped to third parties on behalf of Stellar-Mark.  Cardosi Declaration, ¶ 5; Answer and Counterclaim of Advanced Polymer Technology Corp. ("APT Answer and Counterclaim"), ¶¶ 3-4.  Stellar-Mark ultimately owed APT approximately $500,000.00 for the products Stellar-Mark ordered in 2003, but failed to make payment for those goods.  Cardosi Declaration, ¶ 6; APT Answer and Counterclaim, ¶ 6.

To account for Stellar-Mark's failure to pay for the goods it ordered from APT, in June 2004 Stellar-Mark executed a Promissory Note in favor of APT, which was based on the amount of money Stellar-Mark owed for the products it ordered.  Cardosi Declaration, ¶ 7; Deposition of Terry Lingofelt ("Lingofelt Depo."), p. 47, excerpts attached as Exhibit 1 to the Second Declaration of Dana M. Richens ("Richens Declaration").[1]  At the same time, the parties entered into a Trade Name and Trademark License Agreement (the "License Agreement").  APT Answer and Counterclaim, ¶ 7; Cardosi Declaration, ¶ 7; Exhibit 1 to Richens Declaration, Lingofelt Depo., p. 47.

---

[1]     It was not unusual for Stellar-Mark to be in arrears with APT.  Terry Lingofelt, the President of Stellar-Mark, testified that "there [were] many times that [Stellar-Mark] was, I guess, behind – I don't know if behind or just had outstanding balances many times throughout, I think, 12 years."  Exhibit 1 to Richens Declaration, Lingofelt Depo., p. 65.

## **B.  The Promissory Note**

On June 10, 2004, Stellar-Mark executed the Promissory Note in favor of APT.[2] Under the Promissory Note, Stellar-Mark agreed to pay the principal sum of $480,186.90, plus interest, to APT.  Exhibit 2 to Richens Declaration, Promissory Note, pp. 1, 5. Stellar-Mark agreed to make periodic payments and to pay the principal balance and accrued interest on the first business day occurring on or after March 1, 2005.  Id., Sec. 1(b).  In addition, Stellar-Mark agreed to pay all reasonable costs and expenses incurred by APT in connection with APT's exercise of any of its rights or remedies under the Promissory Note, including collection on the Promissory Note.  Id., Sec. 2(b).

As Stellar-Mark's 30(b)(6) corporate designee, Terry Lingofelt, Stellar-Mark's President, freely conceded in his deposition that Stellar-Mark signed the Promissory Note in favor of APT.  Exhibit 1 to Richens Declaration, Lingofelt Depo., pp. 46-47.  Mr. Lingofelt also freely conceded that Stellar-Mark has failed to pay the entire principal balance and interest due on the Promissory Note.  Id. at 51-52.  Stellar-Mark's current indebtedness under the Promissory Note is $172,797.54, plus interest in the amount of $40,690.97, for a total amount of $213,488.51.  Cardosi Declaration, ¶ 9.

---

[2]  The Promissory Note is attached as Exhibit 2 to the Richens Declaration (also Exhibit 2 of the Deposition of Terry Lingofelt).

## C.  The License Agreement

Also on June 10, 2004, APT and Stellar-Mark executed the Trade Name and Trademark License Agreement (the "License Agreement").[3]  Pursuant to the License Agreement, Stellar-Mark granted to APT a royalty-free right to use the trade name "Stellar-Mark" (the "Trade Name") and certain trademarks, "Pro-Deck (TDC – Traffic Deck Coating System)"; "Pro-Deck (BDS – Balcony Deck Coating System)"; "Pro-Deck (MRS – Mechanical Room System)"; and "Pro-Joint (Expansion Joint System)" (the "Trademarks").

Stellar-Mark granted APT a broad license to the Trade Name and the Trademarks: "[Stellar-Mark] hereby grants to [APT] a royalty-free right to use the Trade Name *in whatever capacity [APT] so desires*.  [Stellar-Mark] hereby grants to [APT] a royalty-free right and license to use the Trademarks *in whatever capacity [APT] so desires*." Exhibit 4 to Richens Declaration, License Agreement, Art. I (emphasis added).

Moreover, under the License Agreement, Stellar-Mark agreed to refrain from using or permitting others to use the Trademarks in conjunction with the sale, distribution or marketing of any polyurethane water proofing or coating products other than those products purchased by Stellar-Mark from APT:

> During the term of this Agreement, [Stellar-Mark] covenants and agrees to refrain from using or permitting use through (sub) licensing or otherwise the Trademarks in conjunction with the sale, distribution or marketing of any polyurethane water proofing or coating products other than those products purchased by [Stellar-Mark] from [APT].

---

[3]     The License Agreement is attached as Exhibit 4 to the Richens Declaration (also Exhibit 5 to the Deposition of Terry Lingofelt).

Id., Art. V.

The License Agreement contains a provision for attorneys' fees.  It provides that if any legal proceeding is brought for the enforcement of the License Agreement or for any breach of it, "the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that proceeding, in addition to any other relief to which it may be entitled."  Id., Sec. 8.2.

The License Agreement remains in force until Stellar-Mark's obligations under the Promissory Note are satisfied.  Id., Sec. 2.2.  Because Stellar-Mark has not satisfied its obligations under the Promissory Note as conceded by Mr. Lingofelt, the License Agreement is currently in effect.

As with the Promissory Note, Mr. Lingofelt freely conceded Stellar-Mark executed the License Agreement.  Exhibit 1 to Richens Declaration, Lingofelt Depo., p. 65.  He understood that the License Agreement provided that, as long as a balance was due and owing by Stellar-Mark to APT under the Promissory Note, APT could use the Trade Name and Trademarks.  Id. at 67-68.  He also admitted that, despite the prohibition in the License Agreement, Stellar-Mark has used the Trademarks in conjunction with the sale, distribution and marketing of polyurethane water proofing or coating products other than products purchased from APT, in breach of Stellar-Mark's obligations under the License Agreement.  Id. at 35-41.  Mr. Lingofelt admitted that Stellar-Mark has sold such products manufactured by a Minneapolis company called CRC.  Id. at 40-41.  In particular, Stellar-Mark has used the Trade Name "Stellar-Mark" and the Trademarks

5

"Pro-Deck" and "Pro-Joint" to sell several polyurethane coating products manufactured by CRC, including products designated as 7510, 7520, 7530, 7540UV, and 7550UV.  <u>Id.</u> at 40-41.  Stellar-Mark markets and sells CRC's products in combinations as the Pro-Deck TDC Traffic Coating System, the Pro-Deck Balcony Coating System, the Pro-Deck Mechanical Room System, and the Pro-Joint System, which are the very same Trademarks Stellar-Mark licensed to APT and agreed to refrain from using under the License Agreement.  <u>Id.</u>  Mr. Lingofelt admitted that within the last year, Stellar-Mark has sold approximately $500,000.00 of polyurethane water proofing and coating products it obtained from CRC, using the Stellar-Mark Trade Name and Trademarks.  <u>Id.</u> at 41-43.

## D.  The Complaint and Counterclaim

APT formally demanded payment for the outstanding amount due under the Promissory Note, but Stellar-Mark failed to make any payment despite demand.  Cardosi Declaration, ¶ 8.

In an apparent pre-emptive move, Plaintiff filed the Complaint in this action on October 19, 2005.  In its Complaint, Stellar-Mark claims that APT breached a contract with it, which Stellar-Mark calls a "Supply Agreement," engaged in unfair competition and committed trademark infringement.  All of Stellar-Mark's claims appear targeted at APT's sale of parking deck coating products using the Stellar-Mark Trade Name and Trademarks, which activity is expressly authorized by the License Agreement.

APT counterclaimed for the amount due on the Promissory Note and for the value of the goods Stellar-Mark purchased in 2003 and for which it has failed to pay.  APT also filed a claim for breach of the License Agreement, based on Stellar-Mark's use of the

Trademarks in the sale, marketing and distribution of coating products other than those purchased from APT.

Because Stellar-Mark's obligations under the Promissory Note have not been satisfied and because the License Agreement remains in effect, APT is entitled to summary judgment on each of the Counts asserted in its Counterclaim. Also, because there is no "Supply Agreement" between the parties, because there are no trade secrets involved, and because the License Agreement expressly permits APT to undertake the actions of which Stellar-Mark complains, APT is entitled to summary judgment on each of Stellar-Mark's claims.

## II.  ARGUMENT AND CITATION OF AUTHORITY

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The Court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Cardiac Pacemakers, Inc. v. Aspen II Holding Co., Inc., 413 F. Supp. 2d 1016, 1023 (D. Minn. 2006) (quoting Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996)). "However, as the Supreme Court has stated, [s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)) (internal marks omitted).

## A.  APT'S Counterclaims

**1.     APT Is Entitled to Summary Judgment on Count One of Its Counterclaim for Breach of Contract – Promissory Note.**

A party is entitled to summary judgment in an action on a note where that party presents a *prima facie* case showing the execution and delivery of the note and its non-payment.  Corestates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1056 (Pa. Super. Ct. 1999) (citation omitted).[4]

Mr. Lingofelt conceded that Stellar-Mark executed and delivered the Promissory Note.  Exhibit 1 to Richens Declaration, Lingofelt Depo., pp. 46-47.  He conceded that Stellar-Mark has failed to pay the entire principal balance and interest due on the Promissory Note.  Id. at 51-52.  Therefore, Stellar-Mark is in default under the Promissory Note.

Stellar-Mark's current indebtedness under the Promissory Note, including principal and interest, is $213,488.51.[5]  Cardosi Declaration, ¶ 9.  Under the Promissory

---

[4]     The Promissory Note is governed by the law of the State of Pennsylvania.  Exhibit 2 to Richens Declaration, Promissory Note, Sec. 11.  APT is located in Harmony, Pennsylvania.

[5]     The Promissory Note provides that the outstanding principal balance bears "simple interest at a rate equal to the rate as published in the 'Money Rates' section of *The Wall Street Journal* from time to time as the 'prime rate' (the 'Prime Rate'), plus one (1) percentage point, such interest rate to be adjusted as of the first Business Day of each calendar quarter based on the Prime Rate most recently announced as of such adjustment date."  Exhibit 2 to Richens Declaration, Promissory Note, Sec. 1(a).  Past due principal and interest bears interest from maturity at a rate equal to the Prime Rate, plus six (6) percentage points.  Id.  As of August 27, 2006, the principal due on the Promissory Note is $172,797.54, and the interest due on the Promissory Note is $40,690.97.  Cardosi Declaration, ¶ 9.  The total due on the Promissory Note, therefore, is $213,488.51.

Note, Stellar-Mark must pay also APT's reasonable costs and expenses in collecting the amount due on the note.  Exhibit 2 to Richens Declaration, Promissory Note, Sec. 2(b). [6]

Because no disputed issue of material fact exists regarding the validity of the Promissory Note, Stellar-Mark's default under it, or the amount due and owing to APT, APT is entitled to summary judgment on Count One of its Counterclaim, in the amount of $213,488.51.

2.     **APT Is Entitled to Summary Judgment on Count Two of Its Counterclaim for Quantum Meruit.[7]**

To establish a claim for quantum meruit, a plaintiff must show that the defendant knowingly received something of value to which it was not entitled, under circumstances that establish that it would be unjust for the defendant to retain the benefit.  Schumacher v. Schumacher, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001); AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001).

Stellar-Mark ordered a number of coating products from APT during 2003, which APT shipped to third parties on behalf of Stellar-Mark.  Cardosi Declaration, ¶ 5; APT Answer and Counterclaim, ¶¶ 3-4.  Stellar-Mark failed to make payment for those goods. Cardosi Declaration, ¶ 6; APT Answer and Counterclaim, ¶ 6.  Although Stellar-Mark

---

[6]     APT's total attorneys' fees and costs in this action are $55,677.95.  Declarations detailing APT's costs and expenses in this action have been filed contemporaneously with this Memorandum of Law.

[7]     APT has asserted a claim for quantum meruit in the alternative to its claim for monies due on the Promissory Note.  Thus, if the Court enters judgment in APT's favor on the Promissory Note, APT's quantum meruit claim is moot.

has made some payments for the goods, it still owes $172,797.54 for the products it ordered during 2003.  Cardosi Declaration, ¶¶ 6, 9.

Because no dispute of material fact exists as to the order of the products by Stellar-Mark, the shipment of the products by APT and the non-payment for all of the products by Stellar-Mark, APT is entitled to summary judgment on Count Two of its Counterclaim.

**3.      APT Is Entitled to Summary Judgment on Count Three of Its Counterclaim for Breach of Contract – Trade Name and Trademark License Agreement.**

Count Three of APT's Counterclaim is based on Stellar-Mark's breach of the License Agreement by using the Trademarks in conjunction with the sale, distribution and marketing of polyurethane water proofing and coating products other than products purchased from APT.  APT Answer and Counterclaim, ¶¶ 28-32.

Stellar-Mark conceded that it entered into the License Agreement, under which Stellar-Mark agreed to refrain from using the Trademarks in conjunction with the sale, distribution or marketing of polyurethane water proofing and coating products other than products purchased from APT.  Exhibit 1 to Richens Declaration, Lingofelt Depo., p. 65; Exhibit 4 to Richens Declaration, License Agreement, Art. V.  Stellar-Mark also agreed that the successful or prevailing party in a suit to enforce the License Agreement or for the breach of it is entitled to attorneys' fees and costs incurred in that proceeding. Exhibit 4 to Richens Declaration, License Agreement, Sec. 8.2.

Stellar-Mark conceded that despite its obligations under the License Agreement, it has used the Trademarks in the sale of coating products not purchased from APT, in

breach of the License Agreement.  Exhibit 1 to Richens Declaration, Lingofelt Depo., pp. 35-41.  In particular, Stellar-Mark has used the Trademarks, including the Pro-Deck and Pro-Joint Trademarks, to sell multiple polyurethane water proofing and coating products manufactured by a Minneapolis company called CRC.  Id.  Within the last year, Stellar-Mark has sold approximately $500,000.00 of polyurethane water proofing and coating products that it purchased from CRC, using the Stellar-Mark Trade Name and Trademarks.  Id. at 41-43.

Since executing the License Agreement, APT has sold protective polyurethane water proofing and coating materials to end customers using the Stellar-Mark trade name and trademarks, as permitted by the License Agreement.  Cardosi Declaration, ¶ 11. Stellar-Mark's average sales price on "Pro-Deck" and "Pro-Joint" products has been approximately $25.00 per gallon.  Id. ¶ 12.  Thus, sales of approximately $500,000.00 of those products, which is the amount of products that Mr. Lingofelt testified that Stellar-Mark has sold in breach of the License Agreement, equates to sales of approximately 20,000 gallons of "Pro-Deck" and "Pro-Joint" products.  APT currently sells "Pro-Deck" and "Pro-Joint" products using the Stellar-Mark name to end users, as permitted by the License Agreement, for approximately $30.00 per gallon.  APT's approximate net profit margin on those sales is thirty percent (30%).  APT's approximate net profit margin on sales of 20,000 gallons of such products would be approximately $180,000.00.  Id. ¶ 13.

Because no disputed issues of material fact exist regarding the parties' execution of the License Agreement, Stellar-Mark's breach of the License Agreement, and damages to APT from Stellar-Mark's breach of the License Agreement, APT is entitled to

summary judgment on Count Three of its Counterclaim, in the amount of $180,000.00.[8]

As the successful party in this action, under the License Agreement, APT is also entitled

to recover reasonable attorneys' fees and costs incurred in this proceeding.[9]

**4.     APT Is Entitled to Summary Judgment on Count Four of Its Counterclaim for Expenses of Litigation.**

Count IV of APT's Counterclaim invokes the Georgia statute for recovery of

litigation expenses, O.C.G.A. § 13-6-11.  This statute applies where a defendant "has

acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary

trouble and expense" in a substantive claim under Georgia law.  O.C.G.A. § 13-6-11.

See also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1316 (11th Cir. 2004)

(citing United Cos. Lending Corp. v. Peacock, 475 S.E.2d 601 (Ga. 1996)).  The License

Agreement is governed by Georgia law.  License Agreement, Sec. 8.1.

"A recovery for stubborn litigiousness or causing unnecessary trouble and expense

is authorized if no bona fide controversy or dispute existed as to the defendant's

liability."  Driggers v. Campbell, 543 S.E.2d 787, 791 (Ga. App. 2000) (citation omitted).

---

[8]     Mr. Lingofelt's testimony established that Stellar-Mark breached the License Agreement by selling polyurethane water proofing and coating products that it had not purchased from APT and that Stellar-Mark had sold approximately $500,000.00 of such products within the last year.  Following Mr. Lingofelt's admission, APT sought discovery from Stellar-Mark to confirm the amount of damages to APT from Stellar-Mark's breach of the License Agreement.  When Stellar-Mark failed to respond to the discovery request, APT filed a motion to compel with this Court.  Doc. 21.  This Court granted APT's motion and ordered Stellar-Mark to serve complete and accurate responses to the discovery by August 18, 2006.  Doc. 33.  To date, Stellar-Mark has not complied with the Court's order.

[9]     See Note 6, supra.

APT brought a claim based on Stellar-Mark's breach of the License Agreement, which is governed by Georgia law.  Although Stellar-Mark denied in its answer to APT's Counterclaim that it had breached the License Agreement, the deposition testimony of Mr. Lingofelt conclusively established that Stellar-Mark breached the License Agreement and is liable to APT for that breach.  No bona fide controversy existed as to Stellar-Mark's liability for breach of the License Agreement.

Therefore, APT is entitled to summary judgment for recovery of its litigation expenses related to its breach of contract claim based on the License Agreement.

**5.    Stellar-Mark's Affirmative Defense of Set-Off Does Not Defeat APT's Motion for Summary Judgment as to APT's Counterclaims.**

In opposing APT's motion for summary judgment on its counterclaims, Stellar-Mark may contend that APT is not entitled to summary judgment because the damages claimed by APT are subject to the affirmative defense of set-off.  See Plaintiff's Answer to Advanced Polymer Technology Corp.'s Counterclaim, p. 4.

However, the existence of a possible set-off does not affect the propriety of summary judgment where the moving party's claim is undisputed.  Summary judgment must be granted in such cases.  See Electroglas, Inc. v. Dynatex Corp., 473 F. Supp. 1167 (N.D. Cal. 1979) (granting summary judgment on defendant's counterclaim for balance due on promissory note, leaving plaintiff's antitrust claim, which could offset the contract claim, for trial).  See also  Electro-Catheter Corp. v. Surgical Specialties Instrument Co., 587 F. Supp. 1446, 1457 (D.N.J. 1984) ("The defendant's assertion of its entitlement to an offset does not preclude this court from granting partial summary judgment on these

contract claims since no material facts remain for adjudication."); <u>Chemetron Corp. v.</u>
<u>Cervantes</u>, 92 F.R.D. 26, 30-31 (D.P.R. 1981) (granting summary judgment on
promissory note where claim was not disputed, although defendant asserted counterclaim
that exceeded amount of note).

Because there is no dispute as to Stellar-Mark's liability on each of APT's
counterclaims, APT is entitled to summary judgment notwithstanding any claim by
Stellar-Mark for set-off.

## B.  Stellar-Mark's Claims Against APT

**1.    APT Is Entitled to Summary Judgment on Stellar-Mark's Claims Against It
Based on APT's Sales of Coating Products Using the Stellar-Mark Trade
Name and Trademarks, Because the License Agreement Expressly
Authorizes APT to Use the Trade Name and Trademarks in Any Capacity It
Desires.**

The majority of Stellar-Mark's claims against APT are based on APT's sales of
deck coating products using the Stellar-Mark Trade Name and Trademarks, including
Counts III (Tortious Interference with Contract), IV (Tortious Interference with
Prospective Business Advantage), V (Violation of Lanham Act & Unfair Competition),
VI (Minn Stat. § 325D.44), VI[10] (Minn. Stat. § 325D.13), VIII (Common Law Trademark
Infringement & Unfair Competition), IX (Unjust Enrichment) and X (Promissory
Estoppel).[11]

---

[10]    The Complaint contains two claims designated as Count VI, based on Minn Stat. §
325D.44 and Minn. Stat. § 325D.13.

[11]    Count II of the Complaint is not against APT.  Counts I and VII are addressed
later in this brief.

APT is entitled to summary judgment on those claims for exactly the same reason that APT is entitled to summary judgment on Count Three of its Counterclaim.  The License Agreement between the parties – which Stellar-Mark conceded it signed and which is still in force – expressly permits the conduct of which Stellar-Mark complains: the use by APT of the Stellar-Mark Trade Name and Trademark in the sale of deck coating products.

The License Agreement provides that "[Stellar-Mark] hereby grants to [APT] a royalty-free right to use the Trade Name *in whatever capacity [APT] so desires*" and that "[Stellar-Mark] hereby grants to [APT] a royalty-free right and license to use the Trademarks *in whatever capacity [APT] so desires*."  Exhibit 4 to Richens Declaration, License Agreement, Art. I (emphasis added).  "Construction of the contract is neither required nor permitted if the contract language is 'plain, unambiguous and capable of only one reasonable interpretation.'"  Briggs & Stratton Corp. v. Concrete Sales & Servs., 20 F. Supp. 2d 1356, 1376 (M.D. Ga. 1998) (quoting Hunsinger v. Lockheed Corp., 192 Ga. App. 781, 783, 386 S.E.2d 537, 539 (1989)).  The grant to APT by Stellar-Mark of the license to use the Trade Name and Trademarks "in what capacity [APT] desires" means just that.  The License Agreement is capable of only one reasonable interpretation: APT has the right to use Stellar-Mark's Trade Name and Trademarks however it chooses. APT has chosen to use the Trade Name and Trademarks in the sale of water proofing and coating products, and APT's doing so cannot form the basis of any claim against APT by Stellar-Mark because the License Agreement expressly authorizes such activity.

15

No dispute of material fact exists regarding the License Agreement's validity or APT's rights under it.  Because the License Agreement expressly permits the conduct upon which Stellar-Mark has based its claims against APT, APT is entitled to summary judgment on each of Counts III, IV, V, VI, VI, VIII, IX and X of the Complaint.

**2.     APT Is Entitled to Summary Judgment on Stellar-Mark's Claim Against It Based on a Non-Existent "Supply Agreement."**

In Count I of the Complaint, Stellar-Mark claims that APT breached a contract between the parties, a contract Stellar-Mark calls a "Supply Agreement."  Complaint, ¶¶ 13, 28-34.  Stellar-Mark claims in the Complaint that, under this "Supply Agreement," APT cannot sell products within defined geographic territories and that APT breached the "Supply Agreement" by doing so.  Id. ¶¶ 31-33.

No such "Supply Agreement" exists between the parties.  When first asked about the "supply agreement" alleged in the Complaint, Mr. Lingofelt testified that he "didn't know" what the supply agreement was.  Exhibit 1 to Richens Declaration, Lingofelt Depo., p. 75.  Mr. Lingofelt conceded that there is no written agreement signed by APT and Stellar-Mark called a "Supply Agreement."  Id. at 76.  Mr. Lingofelt then identified an August 19, 1999 letter from Michael Beyer of APT to Mr. Lingofelt as the so-called supply agreement.[12]  Id. at 57-58, 75-76.  Upon examination, however, the letter from Mr. Beyer cannot be the "Supply Agreement" as alleged in the Complaint.

---

[12]     See Exhibit 3 to Richens Declaration (also Exhibit 3 to the Deposition of Terry Lingofelt).

"A binding contract requires an offer, acceptance of the offer, and consideration."
SuperValu, Inc. v. Quality Farms, Inc., No. Civ. 04-3569, 2005 WL 2475751, *6 (D.
Minn. Oct. 6, 2005) (citing Cederstrand v. Lutheran Bhd., 117 N.W.2d 213, 219-21
(Minn.1962)); Unique Techs., Inc. v. Micro-Stamping Corp., No. Civ.A. 02-6649, 2004
WL 350731, *6 (E.D. Pa. Feb. 5, 2004) (citing Yarnall v. Almy, 703 A.2d 535, 538-39
(Pa. Super. Ct. 1997)).

Even a cursory review of the August 19, 1999 letter from Mr. Beyer to Mr.
Lingofelt compels the conclusion that it is not a contract.  In the letter, Mr. Beyer writes,
"As discussed we want to confirm our interest in building a strong business relationship
with Stellar-Mark . . . ."  Exhibit 3 to Richens Declaration.  As to the claimed geographic
territories, Mr. Beyer states, "Attached is a map outlining the areas we are currently
focusing on, leaving the rest of the United States available for Stellar-Mark to market
Polyurethane membrane systems."  Id.  Mr. Beyer concludes, "[W]e would suggest that
all discussions on these details be between Bob Lane and yourself."  Id.

The letter contains no offer; in fact, it is clearly written in the context of ongoing
discussions between the parties, leaving an agreement to be reached at a later date, if
ever.  Notably, APT does not offer Stellar-Mark any exclusive territory in which to sell
polyurethane products, nor does APT offer to cease selling its products in any areas.
Additionally, the letter does not evidence any acceptance of any offer by APT on the part
of Stellar-Mark or acceptance of any offer by Stellar-Mark on the part of APT.  It does
not evidence any consideration between the parties.  In short, the indisputable facts show

the letter is not a contract and certainly is not a contract fitting the terms of the "Supply Agreement" alleged in the Complaint.

Moreover, Stellar-Mark has provided inconsistent versions as to what exactly the so-called "Supply Agreement" restricted APT from doing.  The map attached to the August 19, 1999 letter from Mr. Beyer indicates that APT was then focusing on the eastern half of Ohio, the western half of Pennsylvania, all of West Virginia, and part of the State of New York.  See Exhibit 3 to Richens Declaration.  Although Stellar-Mark contends this letter was the supply agreement, in its responses to APT's First Interrogatories, Stellar-Mark identified the geographic territories in which APT was permitted to sell its polyurethane coating products as "the geographic areas of Pittsburgh, PA, Cleveland and Akron, OH, and the State of West Virginia," an area which does not encompass all of the areas on the map attached to the August 19 letter.  Stellar-Mark, Inc.'s Answer to Advanced Polymer Technology Corp.'s Interrogatories, pp. 4, 6.  Then, in his deposition, Mr. Lingofelt first testified that APT was permitted to sell its polyurethane coating products only in Cleveland, Ohio and Pittsburgh, Pennsylvania. Exhibit 1 to Richens Declaration, Lingofelt Depo., pp. 55-56.  Later in his deposition, Mr. Lingofelt testified that APT was permitted to sell its products only in Pittsburgh.  Id. at 109-10.  The inconsistencies regarding which areas APT was permitted to sell its products under any supply agreement further buttress the conclusion that the alleged "Supply Agreement" simply does not exist.

Because there is no dispute of material fact as to the non-existence of the claimed "Supply Agreement," APT is entitled to summary judgment on Count I of Stellar-Mark's Complaint.

**3.      APT Is Entitled to Summary Judgment on Stellar-Mark's Trade Secrets Claims Because Plaintiff Has No Protectable Trade Secrets.**

In Count VII of the Complaint, Stellar-Mark claims that APT violated the Minnesota Uniform Trade Secrets Act.  In his deposition, Mr. Lingofelt identified only one "trade secret" which APT allegedly misused.  This claimed trade secret is a lettering and color-coding system for the labels of buckets of coating products.  Exhibit 1 to Richens Declaration, Lingofelt Depo., pp. 30-31, 82-83.  The final coating product applied to deck surfaces is a mixture of two different materials, which are kept in two different buckets and mixed prior to application.  The labels are different colors and labeled "A" and "B" so that non-English-speaking people and color-blind people can differentiate between the buckets to properly mix the product.  Id.

Recovery for violation of the Minnesota Uniform Trade Secrets Act requires proof of (1) the existence of a trade secret; (2) that the defendant acquired the trade secret through a confidential relationship; and (3) that the defendant misused or threatened to misuse the trade secret.  See Minn. Stat. § 325C.01-.03.  To do so, a plaintiff must first show the existence of a trade secret, by establishing (1) that the secret is not generally known or readily ascertainable; (2) that it has economic value; and (3) that the holder of the secret has taken reasonable steps to maintain its secrecy.  Id. § 325C.01; Strategic Directions Group, Inc. v. Bristol-Meyers Squibb Co., 293 F.3d 1062, 1064-65 (8th Cir.

19

2002).  Because Stellar-Mark cannot show the existence of a trade secret or that it was

acquired through a confidential relationship, Stellar-Mark cannot establish a violation of

the Minnesota Uniform Trade Secrets Act.

A system for mixing products prior to application based on the color of the bucket

or labels that read "A" and "B" is so readily ascertainable and so patently obvious that no

steps can be taken to maintain any secrecy to the system.  Anyone purchasing the

products can identify the system.  The entirety of the color-coding and labeling system is

readily apparent (intentionally so!) and is disclosed every time Stellar-Mark sells or

markets its coating products, and the labeling of the materials buckets thus is not a trade

secret.  See FSI Int'l, Inc. v. Shumway, No. Civ. 02-402, 2002 WL 334409, *9 (D. Minn.

Feb. 26, 2002) (concluding plaintiff had not established existence of a trade secret in

information regarding price and specifications of plaintiff's products in part because that

information logically had to be disclosed in order to sell the products).

Moreover, there is no evidence of a confidential relationship between the parties

through which APT acquired the claimed "trade secret."  The parties had a business

relationship under which APT sold products used to coat parking decks to Stellar-Mark,

manufacturing the products and private labeling the products for Stellar-Mark.  Cardosi

Declaration, ¶ 4.  Such a business relationship – even a long-term business relationship –

is not a confidential relationship.  See Klein v. First Edina Nat'l Bank, 196 N.W.2d 619,

623 (Minn. 1972) ("The fact that plaintiff had done business with defendant for nearly 20

years could not by itself place defendant in a confidential relation to plaintiff.").

20

### III.  CONCLUSION

For the foregoing reasons, Advanced Polymer Technology Corporation respectfully requests this Court grant its Motion for Summary Judgment.  APT is entitled to judgment on Count One of its Counterclaim in the amount of $213,488.51, and APT is entitled to judgment on Count Three of its Counterclaim in the amount of $180,000.00. APT is further entitled to attorneys' fees and costs in the amount of $55,677.95.

This 28th day of August, 2006.

<div style="margin-left:40%">

  /s/ Robert J. Hennessey
Robert J. Hennessey (44118)
Daniel J. Sheran (100183)
LINDQUIST & VENNUM P.L.L.P
4200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel. (612) 371-3211
Fax (612) 371-3205

Dana M. Richens
Rachel D. King
SMITH, GAMBRELL & RUSSELL, LLP
Promenade II, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel. (404) 815-3500
Fax (404) 685-6945

**COUNSEL FOR DEFENDANT/
PLAINTIFF-IN-COUNTERCLAIM
ADVANCED POLYMER
TECHNOLOGY CORPORATION**

</div>

Doc# 2176952\1