UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| STELLAR-MARK, INC., | Civil No. 05-2445 (PJS/RLE) |
| Plaintiff, | |
| v. | |
| ADVANCED POLYMER TECHNOLOGY CORP., CONSTRUCTION SPECIALTIES GROUP, NEIL SAVITCH, and MARK STOVER, | |
| Defendants; | ORDER |
| ADVANCED POLYMER TECHNOLOGY CORP., CONSTRUCTION SPECIALTIES GROUP, and NEIL SAVITCH, | |
| Counterclaimants, | |
| v. | |
| STELLAR-MARK, INC., | |
| Counterdefendant. | |

---

Jaren L. Johnson, Thomas M. Fafinski, BENEPARTUM LAW GROUP, PA, 860 Blue Gentian Road, Suite 295, Eagan, MN 55121, for plaintiff/counterdefendant.

Dana M. Richens, SMITH, GAMBRELL & RUSSELL, 1230 Peachtree Street, Suite 3100, Atlanta, GA 30309, for defendant/counterclaimant Advanced Polymer Technology Corp.

Steven C. O'Tool, O'TOOL LAW OFFICE, 4660 Slater Road, Suite 128, Eagan, MN 55122, for defendants/counterclaimants Construction Specialties Group and Neil Savitch.

John M. Harvey, HARVEY & SHEEHAN, LTD., 7401 Metro Boulevard, Suite 555, Minneapolis, MN 55439, for defendant Mark Stover.

Plaintiff Stellar-Mark, Inc. ("Stellar-Mark") brought numerous claims against defendants Advanced Polymer Technology Corp. ("APT"), Construction Specialties Group and Neil Savitch (collectively "CSG"), and Mark Stover ("Stover"). APT and CSG counterclaimed against Stellar-Mark. Presently before the Court are defendants' motions for summary judgment, both on Stellar-Mark's claims against defendants and on APT's and CSG's counterclaims against Stellar-Mark. Following oral argument on those motions, the Court ordered Stellar-Mark and its counsel to show cause why sanctions should not be imposed for filing or "later advocating" frivolous claims. Fed. R. Civ. P. 11(b). In response, Stellar-Mark voluntarily dismissed all of its claims against CSG and Stover and almost all of its claims against APT. Stellar-Mark continues to pursue only three claims against APT: breach of contract, unjust enrichment, and promissory estoppel.

Because Stellar-Mark dismissed all of its claims against Stover, the Court denies Stover's motion for summary judgment as moot. Likewise, because Stellar-Mark dismissed all of its claims against CSG, the Court denies CSG's motion for summary judgment insofar as it relates to Stellar-Mark's claims against it. That motion, too, is moot. As for the remaining claims, the Court grants CSG's and APT's motions for summary judgment on their respective counterclaims against Stellar-Mark, but denies APT's motion with respect to Stellar-Mark's remaining claims against it. Finally, the Court will not impose sanctions against Stellar-Mark or its attorneys at this time, but will instead leave the issue of sanctions to be addressed in the first instance by Chief Magistrate Judge Raymond L. Erickson in connection with Stover's and CSG's pending motions for sanctions.

I.  BACKGROUND

APT (a Pennsylvania corporation) manufactures protective polyurethane water-proofing and coating materials used to protect parking decks and other surfaces.  Since 1994, APT has manufactured coating products for Stellar-Mark (a Minnesota corporation).  APT manufactures the products, puts the products into cans, places Stellar-Mark labels on the cans, and ships the cans to Stellar-Mark customers on behalf of Stellar-Mark.  Cardosi Decl. ¶ 4.  At least some of these products are manufactured exclusively for Stellar-Mark.  Johnson Aff. Ex. D, Oct. 17, 2006 ("Second Johnson Aff.").

For many years, APT and Stellar-Mark did business together on the basis of oral agreements rather than written contracts.  Stellar-Mark claims that, under one of those oral agreements, APT promised that it would not sell any product that it manufactured for Stellar-Mark outside of a geographic area that included all of West Virginia and portions of New York, Pennsylvania, and Ohio.  Second Richens Decl. Ex. 3 ("Richens Decl."); Lingofelt Dep. 57-58.  Terry Lingofelt, president of Stellar-Mark, testified that Michael Beyer, president of APT, orally promised not to sell any such product outside of "that geographic area," and Lingofelt pointed to a letter written by Beyer that, in Lingofelt's view, provides evidence of Beyer's promise. Lingofelt Dep. 58 (referring to a map attached to an August 10, 1999 letter from Beyer to Lingofelt, Richens Decl. Ex. 3).  The letter states that "the rest of the United States [is] available for Stellar Mark to market Polyurethane membrane systems."  Richens Decl. Ex. 3.

Disputes arose between APT and Stellar-Mark.  Stellar-Mark claimed that APT sold products in violation of the alleged geographic restriction.  Second Johnson Aff. Exs. K, L. Stellar-Mark also claimed that APT acted negligently in manufacturing some products for

Stellar-Mark, resulting in defective products being sold under the Stellar-Mark label, and resulting in Stellar-Mark incurring costs to fix problems experienced by its customers. Lingofelt Dep. 87-96. Finally, Stellar-Mark began to fall behind on paying APT for the products that APT manufactured and delivered to third parties on Stellar-Mark's behalf.

By 2004, Stellar-Mark owed APT almost a half million dollars. Second Johnson Aff. Ex. E; Cardosi Decl. ¶¶ 5-6. The parties negotiated several agreements to address this debt and govern their future relationship, including a promissory note ("Note"), a trademark license agreement ("License"), and a supply agreement ("Supply Agreement"). As described below, the parties eventually executed the Note and the License. Richens Decl. Ex. 2 (Note); APT Countercl. Ex. A (License). But the parties never came to terms on the Supply Agreement.

The Note obligated Stellar-Mark to pay $480,186.90[1] to APT, plus interest at a defined rate, according to a monthly schedule of payments (with a final balloon payment due on March 1, 2005). Note 1-2, 5. Lingofelt admitted that Stellar-Mark stopped making payments on the Note because he thought that APT's conduct in selling products in violation of the geographic restrictions, as well as the alleged poor quality of some of the products manufactured by APT for Stellar-Mark, excused Stellar-Mark's performance under the Note. Lingofelt Dep. 52-54. As of April 19, 2005, Stellar-Mark owed $141,760.67 in principal on the Note. Johnson Aff. Ex. G, Sept. 29, 2006 ("First Johnson Aff."). APT has calculated the amount of interest due under the Note to be $26,330.51 as of October 2, 2006. Second Cardosi Decl. ¶ 6 & Ex. 1. The

---

[1]The Note originally included a principal amount of $500,186.90, and this amount still appears in the Note. Stellar-Mark apparently made a $20,000 payment in advance of the Note's execution, however, and an addendum sets the amount at $480,186.90. *See* Note 5 (addendum).

Note also states that it is secured by and provided in connection with the License and the (never executed) Supply Agreement.  Note ¶ 4.

The License grants APT the right to use Stellar-Mark's trade name and certain trademarks "in whatever capacity [APT] so desires."  License Art. I.  The License also prohibits Stellar-Mark from using its own "Stellar-Mark" trade name and various trademarks in connection with the sale, marketing, or distribution of any product, with the exception of products purchased by Stellar-Mark from APT.  License Art. V.  The License renews automatically until Stellar-Mark satisfies its obligations under the Note.  License Art. II.  The License also expressly states that Stellar-Mark's obligations under the Note are conditioned on the License being fully executed and delivered.  License 1.

The Supply Agreement never actually became an "agreement."  Sometime in May or June 2004, Lingofelt signed copies of the Note, the License, and the Supply Agreement, and returned the documents to APT.  First Johnson Aff. Ex. E.  Lingofelt enclosed with the package of signed documents a proposal that changes be made to the Note and to the Supply Agreement.  (He did not propose changes to the License.)  First Johnson Aff. Ex. E.  Lingofelt sought to amend the Supply Agreement to prohibit APT from marketing or selling any product to certain of Stellar-Mark's customers.  Lingofelt also sought to amend the Supply Agreement to impose on APT the obligation to remedy problems caused by defects in the products manufactured by APT for Stellar-Mark.  First Johnson Aff. Ex. E at 7.  APT accepted the proposed changes to the Note, but rejected the proposed changes to the Supply Agreement.  First Johnson Aff. Ex. E.  Further negotiations failed to produce a meeting of the minds on the Supply Agreement.  Thus, although the Note, License, and Supply Agreement were all negotiated at the same time, *see*

Second Johnson Aff. Ex. G, and although Lingofelt signed all three documents, only the Note and the License, and not Supply Agreement, became effective.

Both APT and Stellar-Mark performed under the Note and License.  For example, Stellar-Mark made approximately $380,000 in payments due under the Note.  Lingofelt Dep. 51-52.  In mid-2005, APT and Stellar-Mark engaged in discussions regarding the possible formation of a new limited liability company to be owned jointly by APT and Stellar-Mark.  Second Johnson Aff. Ex. I at 1.  In the course of those negotiations, APT proposed that all of Stellar-Mark's service marks and trademarks be transferred to the new company, free and clear of all liens and encumbrances.  Second Johnson Aff. Ex. I at 1-2.  In exchange, APT would forgive the debt remaining under the Note.  Second Johnson Aff. Ex. I at 2.  No agreement was reached, though, and APT eventually decided not to pursue further the possibility of entering a joint venture with Stellar-Mark.  Second Johnson Aff. Ex. J.  The relationship between APT and Stellar-Mark deteriorated, and this litigation resulted.

## II.  ANALYSIS

### A.  *Standard of Review*

A party is entitled to prevail on a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, a court must consider the nonmoving party's evidence to be true and draw all justifiable inferences arising from the evidence in that party's favor. *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003).

*B. Stellar-Mark's Claims Against APT*

Stellar-Mark brings claims of breach of contract, unjust enrichment, and promissory estoppel against APT.  All of Stellar-Mark's claims are based on the contention that APT violated the alleged agreement not to sell any product that it manufactured for Stellar-Mark outside of a defined geographic area.  APT argues that no such oral agreement existed and that the letter referring to the geographic restriction is not a written contract.  *See* Richens Decl. Ex. 3.  As discussed above, though, Lingofelt testified that Beyer promised not to sell outside of the area, with reference to the map attached to the letter.  Stellar-Mark has also offered evidence of sales by APT that allegedly violated this geographic restriction.

The existence and terms of a contract are questions of fact.  *Bergstedt, Wahlberg, Berquist Assocs., Inc. v. Rothchild*, 225 N.W.2d 261, 263 (Minn. 1975); *TNT Props. Ltd. v. Tri-Star Developers LLC*, 677 N.W.2d 94, 101 (Minn. Ct. App. 2004).  Stellar-Mark has submitted evidence that a contract existed; APT has submitted evidence that no contract existed.  Obviously, a genuine issue of material fact exists, especially as Minnesota law "does not favor destruction of a contract for indefiniteness."  *Hill v. Okay Const. Co.*, 252 N.W.2d 107, 114 (Minn. 1977).  Because of this factual dispute, APT is not entitled to summary judgment on Stellar-Mark's claims against it.

That said, the Court recognizes that APT has not had a fair opportunity to respond to Stellar-Mark's arguments concerning this alleged oral agreement.  Stellar-Mark did not fully set forth those arguments and support them with citations to the record until forced to do so by this Court's show-cause order.  Thus, the Court's denial of APT's motion is without prejudice to APT moving again for summary judgment.  On this record, it appears that APT would stand little

chance of winning such a motion. But if APT wants to argue that it is entitled to summary judgment notwithstanding the dispute over the existence of the oral agreement, it may bring a renewed motion for summary judgment no later than 30 days after entry of this order.

### C. APT's Counterclaims Against Stellar-Mark

APT brings claims against Stellar-Mark for breach of the Note, quantum meruit, and breach of the License, and APT also seeks an award of attorney's fees and the other expenses incurred in this litigation.

#### 1. Breach of Promissory Note and Quantum Meruit

APT seeks summary judgment on its claims relating to Stellar-Mark's failure to pay the full amount due under the Note. Under Pennsylvania law, which governs these claims because of the Note's choice-of-law provision, Note ¶ 11, APT is entitled to summary judgment if the undisputed facts show the execution, delivery, and non-payment of the Note. *See Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1056 (Pa. Super. Ct. 1999). All of these elements — execution, delivery, and non-payment — are established by undisputed evidence. *See* Lingofelt Dep. 46-47 (admitting that Stellar-Mark stopped making payments on the Note).

Stellar-Mark nevertheless argues that none of the documents signed by Lingofelt — not the Note, not the License, and not the Supply Agreement — ever became effective. According to Stellar-Mark, the parties intended the Note, the License, and the Supply Agreement to constitute a single integrated contract. Because the parties never agreed on the Supply Agreement, Stellar-Mark argues, they also did not agree on the Note or License, and the Note has no legal effect. Stellar-Mark relies on Minnesota law (rather than Pennsylvania law) in its discussion of the validity of the Note, apparently on the theory that the Note's choice-of-law

clause, like the rest of the Note, never became effective. Even assuming that Minnesota law applies, Stellar-Mark's argument is meritless.

The primary goal of contract interpretation is to ascertain the intent of the parties. *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). When parties enter into a written contract, their intent must be determined from the language of that agreement. *Metropolitan Sports Facilities Comm'n v. General Mills, Inc.*, 470 N.W.2d 118, 123 (Minn. 1991).

The Note provides that the Supply Agreement is security for the Note. Richens Decl. Ex. 2 ¶ 4. Stellar-Mark argues that "[t]he failure of the parties to agree on the terms of the Supply Agreement frustrates the clear intent and purpose" of the Note. Mem. Opp. Sanctions 5. That is plainly not true. The debt owed by Stellar-Mark to APT was not created by the Note; rather, the debt predated the Note. The Note was negotiated simply to give APT a means to collect — and Stellar-Mark a means to pay — the debt in an incremental and orderly fashion. The purpose of the Note was thus not frustrated by the parties' failure to agree on the Supply Agreement, which, after all, was intended to protect *APT* against non-performance by *Stellar-Mark*. Indeed, the undisputed evidence indicates that Stellar-Mark performed under the Note for several months, and only stopped performing because Lingofelt thought that APT's alleged breach of the geographic restriction excused Stellar-Mark from making further payments. Lingofelt Dep. 52-54. Although the License explicitly provides that APT's execution of the *License* is a condition precedent to Stellar-Mark's obligations under the Note, *see* License 1, no document provides that execution of the *Supply Agreement* is a condition precedent to Stellar-Mark's obligations under the Note.

Stellar-Mark also argues that there is a dispute about the amount due under the Note.  For the purposes of this motion, though, APT is limiting itself to the principal amount of $141,760.67, which Lingofelt admitted was due in an April 19, 2005 letter to APT.  Second Johnson Aff. Ex. E (letter from Lingofelt to Beyer); Second Cardosi Decl. ¶ 4 (APT's concession).  APT's controller, Richard Cardosi, has calculated the total interest due under the Note as $26,330.51.  Second Cardosi Decl. Ex. 1; *see also* Richens Decl. Ex. 2 ¶ 1(a) (stating that past-due principal and accrued interest will bear an interest rate of a published prime rate plus six percentage points).  Stellar-Mark has submitted nothing to dispute that interest calculation.

Stellar-Mark claims that it is entitled to offset various credits and losses against the amount due under the Note.  Other courts have held, however, that when liability under a contract is clear, a potential set-off does not preclude summary judgment.  *See Electro-Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F. Supp. 1446, 1456-57 (D.N.J. 1984).  Stellar-Mark has cited no law to the contrary.  Accordingly, APT is entitled to summary judgment on its claims for principal and interest due under the Note in the amount of $168,091.18.  As the Court finds that APT is entitled to recover under the Note, the Court dismisses APT's claim for quantum meruit as moot.

2.  Breach of Trademark License Agreement

The License, which is still in effect, prohibits Stellar-Mark from using the "Stellar-Mark" trade name and certain trademarks in connection with the sale and marketing of products that have not been purchased from APT.  License Art. V.  APT has offered evidence that Stellar-Mark has violated this provision.  Lingofelt Dep. 37, 40-41 (admitting to use of the names

"Stellar-Mark," "Pro-Deck," and "Pro-Joint" in connection with sales of products purchased from another company); License 1 & Ex. A (listing "Stellar-Mark," "Pro-Deck (TDC – Traffic Deck Coating System)," "Pro-Deck (BDS – Balcony Deck Coating System)," "Pro-Deck (MRS – Mechanical Room System)," and "Pro-Joint (Expansion Joint System)" as subjects of the License).

Stellar-Mark does not dispute that it has sold products in violation of the terms of the License. Rather, Stellar-Mark argues that the License, like the Note, never took effect because of the failure of the parties to agree on the Supply Agreement. As with the Note, however, nothing in the License — or in the Note or Supply Agreement, for that matter — provides that the validity of the License depends on the execution of the Supply Agreement. APT is therefore entitled to summary judgment on the issue of liability. Stellar-Mark is liable to APT for any damages suffered as a result of Stellar-Mark's violation of the License.

APT asks for damages in the amount of $180,000. This figure appears to be somewhat speculative, though. This is not the fault of APT, but rather is the result of Stellar-Mark's failure to comply in a timely manner with ATP's discovery requests. The Court will thus reserve a ruling on damages, but cautions Stellar-Mark that if, within 15 days from the date of this order, Stellar-Mark does not fully comply with Judge Erickson's August 8, 2006 order granting APT's motion to compel discovery on the issue of damages, the Court will deem APT's claim of $180,000 in damages to be established, and judgment in that amount will be entered against Stellar-Mark on APT's claim for breach of the License. *See* Fed. R. Civ. P. 37(b)(2)(A).

3. Litigation Expenses

Finally, APT asserts a right to collect attorney's fees and expenses under the Note and the License, both of which include clauses obligating Stellar-Mark to pay for the fees and expenses incurred by APT in enforcing its rights. Note ¶ 2(b); License ¶ 8.2. APT also relies on Georgia law, which applies by virtue of a choice-of-law clause in the License, License ¶ 8.1, and which permits a litigant in APT's position to recover attorney's fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Ga. Code Ann. § 13-6-11.

Stellar-Mark has not specifically addressed this claim. Counsel for APT submitted an affidavit claiming fees and costs totaling $49,259.78. Richens Decl. ¶¶ 3-4. But APT's counsel did not provide the Court with time entries or other information needed by the Court to determine how much time was devoted to each claim and to assess the reasonableness of the fee request. APT is not entitled — at least at this time — to recover attorney's fees incurred in connection with defending the claims of Stellar-Mark.[2] But APT may recover attorney's fees incurred in connection with bringing the counterclaims aimed at enforcing its rights under the Note and the License.

The Court therefore grants APT's motion for summary judgment in part and denies it in part. To the extent that APT seeks to recover the fees and expenses incurred in defending

---

[2]APT has no basis for asking for the fees and expenses that it incurred in connection with the three claims that have not been dismissed, as those claims are unrelated to efforts by APT to enforce its rights under the Note and License, and as Stellar-Mark did not act unreasonably in bringing those three claims. The other claims — the claims that were voluntarily dismissed by Stellar-Mark — are likewise unrelated to efforts by APT to enforce its rights under the Note and License, and APT has not moved the Court to sanction Stellar-Mark for filing or "later advocating" those claims.

Stellar-Mark's claims, APT's motion is denied. To the extent that APT seeks to recover fees and expenses incurred in enforcing its rights under the Note and License, APT's motion is granted as to liability and held in abeyance as to amount. To recover these fees, APT must file an affidavit and supporting documents identifying the amount of fees and expenses incurred in connection with these counterclaims.

### D. *CSG's Counterclaim Against Stellar-Mark*

CSG brings a counterclaim for unpaid commissions in the amount of $33,129.19, based on Section 5 of the Independent Sales Representative Agreement between CSG and Stellar-Mark. *See* Compl. Ex. A. On February 10, 2006, CSG served Stellar-Mark with requests for admissions under Fed. R. Civ. P. 36. O'Tool Aff. Ex. E. Request Number 15 asked Stellar-Mark to admit "[t]hat Plaintiff owes Defendant Neil Savitch/Construction Specialties Group the total amount of $33,129.19 for unpaid commissions arising from sales made by Savitch during calendar years 2003 and 2004 and as set out in Plaintiff's commission reports which remain in Plaintiff's possession." O'Tool Aff. Ex. E at 3. CSG asserted in its brief and at oral argument that Stellar-Mark never responded to these requests for admission. Failure to respond to a Rule 36 request operates as an admission of the matter requested. *See Manatt v. Union Pac. R. Co.*, 122 F.3d 514, 516-17 (8th Cir. 1997). Stellar-Mark has therefore admitted that it owes $33,129.19 to CSG.

The Court has discretion to permit the filing of an untimely response to a request for admission, *id.*, but Stellar-Mark has not requested leave to file a late response, and the record does not suggest any reason why this Court would grant such a request. Accordingly, CSG is entitled to summary judgment on its counterclaim in the amount of $33,129.19.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Stover's motion for summary judgment [Docket No. 46] is DENIED AS MOOT.

2. Defendant CSG's motion for summary judgment [Docket No. 73] is DENIED AS MOOT, except that the motion is GRANTED with respect to CSG's counterclaim against Stellar-Mark in the amount of $33,129.19.

3. Defendant APT's motion for summary judgment [Docket No. 34] is GRANTED in part and DENIED in part as follows:

    a.  With respect to Stellar-Mark's claims against APT, APT's motion is DENIED WITHOUT PREJUDICE with respect to Stellar-Mark's claims of Breach of Contract (Count I), Unjust Enrichment (Count IX), and Promissory Estoppel (Count X) and DENIED AS MOOT with respect to Stellar-Mark's other claims.

    b.  With respect to APT's counterclaims against Stellar-Mark:

        i.  APT's motion is GRANTED with respect to APT's counterclaim for Breach of Contract — Promissory Note (Count One) for principal and interest in the amount of $168,091.18, and for attorney's fees and costs (Count Four) in an amount to be determined;

        ii. APT's motion is DENIED AS MOOT with respect to APT's counterclaim for Quantum Meruit (Count Two); and

       iii.     APT's motion is GRANTED with respect to APT's counterclaim for Breach of Contract — Trade Name and Trademark License Agreement (Count Three) in an amount to be determined, and for attorney's fees and costs (Count Four) in an amount to be determined.

Dated: November 27, 2006

s/Patrick J. Schiltz  
Patrick J. Schiltz  
United States District Judge